NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUN 28 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   17-10210 |
| Plaintiff-Appellee, | D.C. No. 2:14-cr-00079-KJD-PAL-1 |
| v. | |
| BRYON QUACKENBUSH, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted June 13, 2018
San Francisco, California

Before:  SCHROEDER, EBEL,** and OWENS, Circuit Judges.

Defendant Bryon Quackenbush appeals the district court's denial of his motion to suppress statements he made during a law enforcement interview in his apartment.  As the parties are familiar with the facts, we do not recount them here. We affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), adopted procedural safeguards to guarantee that suspects are advised of certain rights before a "custodial interrogation." *Id.* at 444-45. A defendant is "in custody" for *Miranda* purposes if "in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citations omitted) (alteration in original).

In *United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008), we identified four relevant considerations in determining whether an interrogation at a defendant's home was custodial: "(1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made." *Id.* at 1084. While we concluded in *Craighead* that the defendant was in custody during an interrogation at his home, this case differs from *Craighead* in at least four material respects:

First, the interview environment in this case did not have the military undertone present in *Craighead*. The defendant in *Craighead* was a member of the military—as were many of the officers who came to question him, and he was

living on an Air Force base, increasing the likelihood that he would not feel free to leave during questioning. *See id.* at 1078. Quackenbush was not a member of the military, and neither were the law enforcement agents who were present during his interview.

Second, the number and appearance of the officers involved in the questioning here made the interview less imposing than the one in *Craighead*. There were fewer officers involved in the interview in this case. *Compare Craighead*, 539 F.3d at 1085. The officers wore plain clothes rather than uniforms or tactical gear. And the officers' firearms were concealed and not drawn, whereas officers involved in the interview in *Craighead* unholstered their weapons at various points. Indeed, the magistrate judge and district court credited testimony from Special Agent Nicholas Bugni that the interactions in this case were low-intensity throughout the arrest of Quackenbush's roommate and later interview.

Third, Quackenbush was far less isolated than the defendant in *Craighead*. The defendant in *Craighead* was interviewed in a dark storage room at the back of his house. *Id.* at 1087. He was separated from his supervisor who had specifically come with the search and interview teams to offer emotional support to the defendant. *Id.* The door to the storage room was closed. *Id.* at 1086. And an armed officer wearing a "raid vest" stood blocking the closed door. *Id.* Here, Quackenbush was interviewed in the dining room, in view of his apartment's open

3

front door. And there is no evidence that anyone was barred from entering the apartment.

Fourth, the statements from law enforcement that the defendant did not need to answer questions were clearer here than they were in *Craighead*. The district court and magistrate judge found that Bugni told Quackenbush he was not under arrest, was free to leave, and did not need to answer questions.[1] "We have consistently held that a defendant is not in custody when officers tell him that he is not under arrest and is free to leave at any time." *United States v. Bassignani*, 575 F.3d 879, 886 (9th Cir. 2009). We observed in *Craighead* that although the defendant was told he was free to go, the circumstances of the interview and number of different agencies involved in the search of his home left the defendant justifiably concerned that the one officer who told him that he was not under arrest and that his statements were voluntary did not speak for the other officers. *Craighead*, 539 F.3d at 1088-89. There was no such cause for concern here.

Given the totality of the circumstances, Quackenbush was not in custody during his interview with Bugni. Therefore, no *Miranda* warnings were needed,

---

[1] While Quackenbush testified at an evidentiary hearing that Bugni told him he was free to remain silent only by following his roommate to jail, Bugni repeatedly denied that he had conditioned the statement that Quackenbush did not need to answer questions. There was no clear error in the magistrate judge's and district court's decisions to credit Bugni's testimony on this issue.

4

and the district court correctly denied Quackenbush's motion to suppress.  *See*

*Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam).

**AFFIRMED.**